367 So.2d 828 (1979)
Roy YOUNG et ux.
v.
Richard J. CLEMENT, M. D., et al.
No. 62789.
Supreme Court of Louisiana.
January 29, 1979.
Rehearing Denied March 5, 1979.
*829 Robert W. Clements, Bernard H. McLaughlin, Jr., Stockwell, Sievert, Vicellio, Clements & Shaddock, Reginald W. Farrar, Jr., Raggio, Farrar, Cappel & Chozen, Lake Charles, for defendants-respondents.
Reuvan N. Rougeau, Roche & Rougeau, Lake Charles, for plaintiffs-applicants.
DIXON, Justice.[*]
In this medical malpractice suit exceptions of prescription were sustained in the trial court and affirmed on appeal. Young v. Clement et al., 359 So.2d 1070 (La.App. 1978).
The damage complained of resulted from surgery by Dr. Clement which removed Mrs. Young's Fallopian tubes and ovaries on January 26, 1973, which plaintiffs claim were healthy, and from an errant stitch which blocked a ureter and required additional corrective surgery.
On November 20, 1975 plaintiffs filed their first suit, against Dr. Clement alone; the suit alleged a course of surgical procedures which followed a persistent uterine infection during pregnancy, the failure to diagnose and treat properly, and, specifically, the negligent suturing of the ureter on January 26, 1973 during the removal of the ovaries. An amending petition was filed on February 9, 1976 making St. Paul Fire and Marine Insurance Company, Dr. Clement's insurer, a party, and specifying that the removal of the tubes and ovaries on January 26, 1973 was an unwarranted procedure because they were neither inflamed, infected nor malignant.
Another supplemental petition was filed on September 2, 1976 joining St. Patrick Hospital of Lake Charles, Inc. (also insured by St. Paul Fire and Marine Insurance Company) alleging that the hospital knew or should have known that Dr. Clement improperly performed unwarranted surgery and wrongfully permitted him to operate in the hospital without proper supervision.
The Court of Appeal had only this to say about the prescription issues:
"The prescription issue was resolved on the basis of factual determinations by the trial court against the plaintiffs. There is a reasonable evidentiary basis in the record for the findings of the trial court and, therefore, there is no manifest error." 359 So.2d at 1071.
As held in Arceneaux v. Domingue, 365 So.2d 330, 1978, such a finding does not complete the appellate review of facts. When there is a reasonable evidentiary basis for the findings of the trial court they will not be disturbed unless manifestly erroneous (clearly wrong).
In his written opinion the district judge accepted July, 1975 as the time when the Youngs had actual knowledge of the cause of the blockage of the ureter. It was then that Dr. Melton told Mr. Young that the likely cause was a misplaced stitch during the removal of Mrs. Young's tubes and ovaries. (Dr. Melton performed corrective surgery February 1, 1973). Mr. Young was prompted to inquire of Dr. Melton because of rumors about the reasons for Dr. Clement's prior departure from Lake Charles.
The district judge was impressed by the fact that, after the surgery in February, 1973, Dr. Melton had explained to Mrs. Young that the cause of her pain which made the surgery necessary was a blockage of the ureter. The judge found that Dr. Melton would have told the Youngs the cause of the blockage if they had asked, and said, "They should have asked the question, `why the blockage' then." Such "constructive knowledge," the trial court held, defeated *830 plaintiffs' efforts to avoid the running of prescription on their claim for the blocked ureter.
As for the claim for wrongful removal of healthy tissues (Fallopian tubes and ovaries) on January 26, 1973, the trial court found that the Youngs were not so ignorant of the factual basis of their claim as to prevent the running of prescription. Because Dr. Clement read the pathologist's report to the Youngs shortly after the operation, presumably, the Youngs should have known that the tubes and ovaries were healthy and that their removal, therefore, unwarranted.
Prescription does not run against one who is ignorant of the existence of facts that would entitle him to bring a malpractice action, as long as such ignorance is not willful and does not result from his neglect. Henson v. St. Paul Fire and Marine Insurance Co., 363 So.2d 711 (La.1978). Roy Young is a butcher; he and his wife both had confidence in Dr. Clement, who had treated her since October of 1970. Mrs. Young had kidney trouble since she was eleven. She had been hospitalized and treated for urinary tract infections. Once she was hospitalized for pain in the kidney area very much like that suffered after the January 26, 1973 operation, but on the opposite side. She had her fourth child in May of 1971 and a hysterectomy on January 18, 1972. Several surgical procedures followed in 1972 because of bleeding of the vaginal cuff. Dr. Clement was still treating her when he moved to New Orleans in the middle of 1974, and he referred her to another doctor for care in his absence. The record discloses no evidence that the Youngs should have suspected that the reason for the blockage of the ureter was a negligent stitch by Dr. Clement during the operation to remove the tubes and ovaries. Dr. Clement, himself, according to his testimony, does not believe he stitched the ureter closed. He admits the blockage was due to the surgery. Dr. Melton's operation to relieve the blockage did not explore the cause of the blockage. Dr. Clement believed the blockage was a result of intentional but necessary closing of the peritoneum over the ureter to stop bleeding. Dr. Melton's opinion differed.
Neither doctor, obviously, told the Youngs that the surgeon's negligence caused the blockage. The record does not support the trial judge's conclusion that the Youngs should lose the right to litigate their claim because they failed to ask Dr. Melton, "Why the blockage?"
Nor should a finding that the Youngs were read the pathologist's report after the removal of the tubes and ovaries justify a conclusion that the Youngs knew or should have known that the removal was unnecessary and unwarranted. That report is as follows:
"ST. PATRICK HOSPITAL
of Lake Charles
524 S. Ryan Street
Lake Charles, La. 70601
TISSUE CONSULTATION
Submitted by Dr: Clement
Date of Surgery 1/26/73
Pre-operative diagnosis:
`P.I.D., Bleeding disorder.'
Post-operative diagnosis:
`Exp. lap; bil. S & O.'
`Left ovarian cyst.'
Specimen:
`Both tubes and ovaries (cyst on left ovary).'
Brief clinical history:
`Previous hyst. Chronic P.I.D. since time of her surgery.'
GROSS: Received in one container are two grossly identifiable ovarian structures, two strips of skin and smaller fragments of soft tissue.
The strips of skin are characterized by the presence of linear scars. One ovary measures approximately 4 cm. in diameter. Another measures approximately 3 cm. in height. Segments of fallopian tube appear to be adherent to the ovarian surfaces. On sectioning both ovaries fairly large unilocular blood filled cysts are encountered. Grossly they appear to represent hemorrhagic corpus luteum cysts. The small ovary contains several small follicular cysts containing clear watery *831 fluid. No gross evidence of active inflammation is apparent. Sections are submitted.
MICROSCOPIC: Sections of both ovaries reveal small follicular cysts and multiple corpora albicantia. No active inflammatory changes are noted. Sections include segments of fallopian tube which are attached to the ovarian surfaces. Fallopian tubes are not remarkable on section.
DIAGNOSIS: BILATERAL OVARIES AND FALLOPIAN TUBES AND STRIPS OF SKIN CONTAINING LINEAR SCARS: (A) FOLLICULAR CYSTS OF OVARIES."
Dr. Clement testified that the report showed a chronic infection present, and that he so informed Mrs. Young. Dr. Clement seemed to take the position that the pathology report justified the operation. He might be right. But the Youngs cannot be held to a superior ability to interpret the report to mean that he was wrong, and that they must sue within a year or lose their right.
On September 2, 1976 St. Patrick Hospital of Lake Charles, Inc. was made a party defendant by the second supplemental and amending petition. Plaintiffs alleged that the hospital knew or had reason to know that Dr. Clement "without justification, arbitrarily performed unwarranted surgery" without proper and normal diagnostic procedures and pathological evaluations. On the trial of the exception of prescription very little evidence was devoted to this aspect of plaintiffs' case. The trial judge concluded that more than a year passed after plaintiffs employed a lawyer, investigated the case, and filed the original suit against Dr. Clement. Plaintiffs failed to show an ignorance of the factual basis for their claim against the hospital existing in the year before the claim against the hospital was filed.
In their Assignment of Error No. 2 plaintiffs complain about the trial court's ruling on questions arising during a discovery deposition of an administrator of the hospital. The administrator had been instructed not to answer questions about the identity of the hospital "Tissue committee," and actions it might have taken with reference to Dr. Clement. The trial judge upheld the refusal as justified under R.S. 44:7 D,[1] an amendment to the public records act by Act No. 679 of 1975.
We need not at this time discuss plaintiffs' arguments with respect to restrictions on discovery and the application of R.S. 44:7, except in one particular. Plaintiffs suggest that the refusal to answer questions about the "Tissue committee" was part of an effort to "conceal, hinder, and impede plaintiffs from ascertaining the nature and scope of the injuries and damages sustained by Judy Ann Young . . ." If this is an argument that plaintiffs were prevented by the hospital from acquiring sufficient information to form the basis of their claim against the hospital, it is not supported by the record.
On the record before us, the plea of prescription of the hospital was correctly sustained.
In their Assignment of Error No. 1 plaintiffs complain of a denial of a motion for a new trial. No abuse of discretion is shown.
For these reasons the judgments of the court below are affirmed in part and reversed *832 in part. The judgment sustaining the exception of prescription filed by St. Patrick Hospital of Lake Charles, Inc. is affirmed, and the costs attributable thereto are to be borne by plaintiffs; the judgment sustaining the plea of prescription filed by Dr. Richard J. Clement and St. Paul Fire and Marine Insurance Company is reversed at defendants' cost, and the case is remanded to the district court for further proceedings.
NOTES
[*] Chief Judge James E. Bolin participated in this decision as Associate Justice Ad Hoc sitting in the place of Chief Justice Joe W. Sanders, Retired.
[1] "The records and proceedings of any hospital committee, medical organization committee or extended care facility committee established under state or federal law or regulations or under the bylaws, rules or regulations of such organization or institution shall be confidential and shall be used by such committee and the members thereof only in the exercise of the proper functions of the committee and shall not be public records and shall not be available for court subpoena. No physician, hospital, whether public or private, organization, or institution furnishing information, data, reports, or records to any such committee with respect to any patient examined or treated by such physician or confined in such hospital or institution shall, by reason of furnishing such information, be liable in damages to any person. No member of such a committee shall be liable in damages to any person for any action taken or recommendation made within the scope of the functions of such committee if such committee member acts without malice and in the reasonable belief that such action or recommendation is warranted by the facts known to him."