GUIDRY, Judge,
dissenting.
Our Supreme Court’s holding in Daube v. Bruno et al, 493 So.2d 606 (La.1986), is decisive of the issue concerning the applicable prescriptive period. In that ease, which is *707 similar on its facts to the instant case, the Supreme Court concluded that “the action authorized by La.R.S. 10:3-419(1) by a true owner of a check against the bank for payment on a forged instrument is not an action on a negotiable instrument but is a delictual action subject to a liberative prescription of one year' under Civil Code Art. 3492”. In the Daube ease, our Supreme Court specifically rejected the plaintiffs contention that such an action is one on a negotiable instrument subject to a liberative prescription of five years. The above being considered, it is clear that the applicable prescriptive period in this ease is one year and since this suit was filed more than three years after the last check cleared the banking system, absent some interruption or suspension of prescription, plaintiffs action is prescribed on its face. The trial court concluded that the one year prescriptive period was suspended under the doctrine of contra non valentem until the deposition of Douglas Hayes was taken in July of 1989. The majority affirms the trial court’s conclusion in this regard. I respectfully disagree.
In the case of In Re: Medical Review Panel of Howard, 573 So.2d 472 (La.1991), our Supreme Court explained the doctrine of contra non valentem and discussed its application stating:
The key inquiry in most contra non valentem eases is the commencement date of the one-year prescriptive period under the discovery rule. The doctrine itself is based on the theory that when the claimant is not aware of the facts giving rise to his or her cause of action against the particular defendant, the running of prescription is for that reason suspended until the tort victim discovers or should have discovered the facts upon which his or her cause of action is based. Lott v. Haley, 370 So.2d 521 (La.1979). It is often difficult to identify a precise point in time at which the claimant becomes aware of sufficient facts to begin the running of prescription.
Constructive knowledge sufficient to commence the running of prescription requires something more than a mere apprehension that something might be wrong. Cordova v. Hartford Accident & Indemnity Co., 387 So.2d 574 (La.1980). Prescription does not run against one who is ignorant of the facts upon which his cause of action is based, as long as such ignorance is not willful, negligent or unreasonable. Young v. Clement, 367 So.2d 828 (La.1979).
In determining the date of commencement of prescription in “should have discovered” cases, this court in recent cases following Cordova and Young has focused on the reasonableness of the claimant’s action or inaction.
As I appreciate the Supreme Court’s holding in Howard, the burden rests with the party relying on contra non valentem to establish that his/her ignorance of the facts giving rise to his/her cause of action was not the result of negligence or unreasonable conduct. In other words, a party is deemed to know what he could know by the exercise of reasonable diligence and contra non valentem is inapplicable if ignorance of the necessary facts is attributable to his/her own negligence and unreasonableness. It is this latter principle which, under the particular circumstances of this case, prevents application of the doctrine. I reach this conclusion on the basis of the following undisputed facts clearly reflected in the record.
E.W. and Douglas Hayes, co-owners of the property which generated the funds, had an extremely loose arrangement which allowed Douglas Hayes complete control of the farming operation of the 530 acres and complete control and use of the funds generated from the farming operation, subject only to the condition that Douglas Hayes would pay the installments due under the Federal Land Bank loan as they became due. Although E.W. Hayes, sole owner of Riceacres, was well aware that Douglas Hayes’ farming operations were in financial trouble as early as 1984, E.W. Hayes made no effort to ascertain whether or not the payments due on the loan from FLB were being made as promised. In this latter connection, E.W. Hayes knew that funds had been generated from farming operations during this period which should have been applied, at least in part, to payment of the Federal Land Bank loan because he had endorsed three cheeks for considerable sums of money which were turned back over to Douglas Hayes without question.
*708 Most importantly, in 1986 when the FLB loan became delinquent and FLB threatened foreclosure, Riceacres was obligated to pay off the loan in full and thereafter acquired the one-half interest previously owned by Douglas Hayes. Certainly, at that time, an accounting must have been made by the Federal Land Bank to Riceacres as to the balance due and the payments which had been made on the loan since its inception. In the event such an accounting was not made, certainly same was available to Riceacres and reasonable business practice would dictate that same be demanded. Since E.W. Hayes was well aware that monies had been generated from the farming operation, a perusal of the accounting documents would have reflected that payments on the Federal Land Bank loan had not been made as promised.
I conclude that the facts set forth above were sufficient to place E.W. Hayes on notice that inquiry was required in order to determine whether or not funds generated from the farming operation, earmarked for payment to Federal Land Bank, had been misappropriated by Douglas Hayes. Lack of inquiry on the part of E.W. Hayes, under such circumstances, was negligent and unreasonable and, in my opinion, bars applicability of the doctrine of contra non valentem. For these reasons, I respectfully dissent.