George Andrew LAVELLEE, Jr.,
Plaintiff-Appellant,

v.

Carlo LISTI, Sheriff, Lafayette Parish,
Louisiana, et al., Defendants-
Appellees.

No. 78–3397.

United States Court of Appeals,
Fifth Circuit.

Feb. 15, 1980.

Paul M. Haygood, New Orleans, La. (Court Appointed—Not under Act), for Lavallee, plaintiff-appellant.

James Parkerson Roy, Peter C. Piccione, Jr., Lafayette, La., for Listi, defendant-appellee.

Before TUTTLE, GOLDBERG and RANDALL, Circuit Judges.

GOLDBERG, Circuit Judge:

George A. Lavallee, Jr., appeals from a summary judgment dismissing his 42 U.S.C. § 1983 claim against several defendants and partially dismissing his claim against other defendants. The court below expressly determined that there was no just reason for delay and entered a final judgment, as provided by Rule 54(b) of the Federal Rules of Civil Procedure. We reverse in part.

*Facts and Proceedings Below*

On January 10, 1978, Lavallee filed a *pro se* complaint seeking monetary, declaratory, and injunctive relief against Carlo Listi, the sheriff of Lafayette Parish, Louisiana, Jack Eastwood, the former warden of the Lafayette Parish Jail, various deputy sheriffs and other law enforcement officials of Lafayette Charity Hospital ("hospital"), and various unknown doctors, nurses and medical staff of the hospital. Lavallee alleges

that on September 8, 1976, he was arrested and then transported to the hospital, where he was forced by defendant deputy sheriffs and hospital personnel to undergo an extraction of his spinal fluid. He alleges that he strenuously resisted this procedure, and that the defendants present held him down to force him to submit. According to his complaint, he was then taken to the Lafayette Parish Jail where he was locked in a bare, unsanitary, padded cell, and his pleas for an examination for the pain in his back were first met with threats of beatings. He alleges that he was then placed in irons and locked, hands and feet, to a drain pipe, in a fetal position. He further alleges (by amended complaint) that he was not allowed to see a physician until February 3, 1977, at which time he first discovered that his back had been permanently damaged by defendants' actions.

Reading the allegations of Lavallee's complaint liberally, as we must, see *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), we distinguish three separate types of allegations. First, he claims that he was assaulted on September 8, 1976, by both sheriff's deputies and medical personnel, and forced to submit to a spinal tap. Second, he alleges that sheriff's office personnel failed to provide him medical attention until February 3, 1977. Third, he alleges that the spinal tap was performed negligently, an allegation of medical malpractice.[1]

Defendants' answer denied all material allegations of the complaint. Defendants later all moved for summary judgment on the ground that plaintiff's cause of action was barred by the one-year prescriptive period provided by Louisiana law.[2]

The trial court, relying on Louisiana law, granted defendants' motions with respect to all claims except those seeking damages for incidents which occurred after January 10, 1977.

*Federal or State Law*

■ The trial court applied the Louisiana prescriptive period to determine which claims of Lavallee were time-barred. It was correct to apply the state statute of limitations in this § 1983 action. *See, e. g., Kissinger v. Foti*, 544 F.2d 1257, 1258 (5th Cir. 1977) (per curiam). However, in such a suit, "even though a state statute [of limitations] is applied, the question when a federal cause of action *accrues* is a matter of federal, not state law." *Donaldson v. O'Connor*, 493 F.2d 507, 529 (5th Cir. 1974) (footnote omitted), *vacated and remanded on other grounds*, 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975); *accord, Briley v. State of California*, 564 F.2d 849, 855 (9th Cir. 1977); *Cox v. Stanton*, 529 F.2d 47, 50 (4th Cir. 1975).[3]

1. Since the issue is not before us, we express no opinion concerning whether plaintiff's claims relating to his medical treatment rise to the level of a constitutional tort. *See Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

2. The prescriptive period under Louisiana law is the equivalent of a statute of limitations under the common law.

3. Since federal law governs accrual of § 1983 causes of action, we do not reach the question of whether the trial court was correct in his application of Louisiana law concerning accrual of causes of action. At least for the malpractice claim, the issue appears to be much more difficult than the trial court's opinion indicates. LSA–R.S. 9:5628 A (West Supp.1979) states that actions for medical malpractice must be brought within one year "from the date of the alleged act, omission or neglect, or within one year from the date of discovery of the alleged act, omission or neglect [if within

three years of the date of the alleged act]." The Louisiana courts have interpreted this to mean that "prescription generally does not commence to run until the injured party has actual or constructive knowledge of the tortious act, the damage, and the causal relation between the tortious act and the damage." *Duhon v. Saloom*, 323 So.2d 202 (La.App. 3d Cir. 1975), *quoted in Sumerall v. St. Paul Fire & Marine Insurance Co.*, 366 So.2d 213, 214 (La. App. 2d Cir. 1978). In *Sartin v. St. Paul Fire & Marine Insurance Co.*, 359 So.2d 649, 651 (La. App. 1st Cir. 1978), the running of the prescriptive period was held to commence only when the plaintiff's injury was connected to negligent performance by the defendant, rather than when the plaintiff suffered pain subsequent to a surgical procedure. *See generally, Higgenbotham v. Oschner Foundation Hospital*, 607 F.2d 653 (5th Cir. 1979).

*The Federal Standard*

■ It is not hard to state the federal standard governing the accrual of a cause of action under § 1983: "[f]ederal law holds that the time of accrual is when plaintiff knows or has reason to know of the injury which is the basis of the action." *Cox, supra*, 529 F.2d at 50; *accord, Bireline v. Seagondollar*, 567 F.2d 260, 263 (4th Cir. 1977). Although simple to state, this standard can be exceedingly difficult to apply to concrete fact situations. A brief discussion of the differences between the various possible standards may be helpful here in explaining the appropriate test.

We perceive at least four possible times at which a cause of action for medical malpractice could accrue. Probably the simplest standard to administer, at least in most situations, is one which deems the cause of action to accrue at the moment of physical injury. This standard is inconsistent with the language quoted above, and has clearly been rejected. *See Cox, supra*. Although the "moment of injury" standard has the significant advantage of often avoiding factual controversy, it has the even more significant disadvantage of often unfairly foreclosing legitimate claims which, through no fault of the plaintiff, are not discovered until after the statute of limitations has expired.

At the other extreme is a standard which would start the statute running only when the plaintiff was aware or should have been aware that his legal rights had been invaded. This requires not only a knowledge of the fact of and extent of the injury, but also an awareness of the causal connection between the defendants' acts and the injury, and of the applicable legal standard. This standard is also foreclosed by precedent. *See United States v. Kubrick*, —— U.S. ——, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979).[4]

Between these extremes are two other standards, and possible variants. One would hold that a cause of action accrues when the plaintiff becomes aware or should become aware of his injury; the other, when the plaintiff is, or should be, aware of both the injury and its connection with the acts of defendant. Both of these variants are consistent with the language from *Cox, supra*, quoted, at page 1130 of this opinion.[5]

■ We believe the latter standard is required by the Supreme Court's opinion in *Kubrick, supra*. There, the Supreme Court distinguishes between plaintiff's knowledge of the "factual predicate for a malpractice claim," i. e., "the fact of his injury [and] its cause," and awareness that a legal wrong has been done. *See id.*, —— U.S. at ——, 100 S.Ct. at 359 & n.8. By making this distinction, the Supreme Court has rejected the standard which would allow the statute of limitations to commence running before the plaintiff was or should have been aware of the causal connection between his injury and the acts of defendants. Until the plaintiff is in possession of the "critical facts that he has been hurt and who has inflicted the injury," *id.*, the statute of limitations does not commence to run.

For the malpractice claim here, we lack sufficient facts to apply the standard.[6] If

---

4. *Kubrick* involved the timing of accrual of a claim under the statute of limitations of the Federal Tort Claims Act, 28 U.S.C. § 2401(b). It might be argued that different considerations should apply under § 1983 than under the Federal Tort Claims Act or the Federal Employers Liability Act, and that the standard for accrual of a cause of action, although federal law under each act, varies from act to act. No such argument has been made here, and prior cases under one federal act have relied on cases under other federal acts concerning accrual of causes of actions. *See, e. g., Bireline, supra*, 567 F.2d at 263 (F.E.L.A. cases relied on in § 1983 cases); *Cox, supra*, 529 F.2d at 50

(same). We therefore must assume that the federal standard for accrual of claims does not vary among these statutes, and we are fully justified in relying on cases under these other acts. *Kubrick* is especially relevant because the claim there, like the primary one here, essentially alleges medical malpractice.

5. In *Cox*, as here, there is no claim that plaintiff was unaware of the causal connection between his or her injury and defendants' acts.

6. Our focus here is directed more to the "injury" than the "causal connection" part of the standard, although the alleged assaults and

# 1132

plaintiff was unaware of the permanence of his injury,[7] and reasonably thought that the pains in his back were the normal result of a spinal tap or were caused by the alleged assaults, he cannot be deemed to have knowledge of the factual predicate of his claim or its connection with possible malpractice by the defendants. Until he suspected, or should have suspected, that his pain was not the result of a properly-conducted spinal tap or of the alleged assaults, he lacked any factual basis on which to suspect an invasion of his legal rights. He must be afforded an opportunity to show this.

■ We turn briefly to plaintiff's other claims. The assault claim is clearly barred by Louisiana's one-year statute of limitations for tort claims.[8] La.Civ.Code Ann. art. 3536 (West 1973). *See Kissinger v. Foti, supra.* In this respect we affirm the court below. However, the allegation of a failure to provide needed and requested medical attention constitutes a continuing tort, which does not accrue until the date medical attention is provided. *Cf. Donaldson, supra*, 493 F.2d at 529 (accrual of false imprisonment cause of action). On this aspect of plaintiff's claim, as well as its malpractice aspect, we must reverse.

Because the trial court applied Louisiana law rather than federal law to decide when plaintiff's § 1983 cause of action accrued, we reverse in part and remand for further proceedings consistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART, and REMANDED.

lack of medical attention may have prevented the plaintiff from suspecting any connection between the medical acts performed by defendants and his back ailment.

7. In *Kubrick*, plaintiff had long been aware of the extent of his injury and that it had been caused by his taking a certain drug which had been prescribed for him. The knowledge he lacked until within the statutory period was that prescription of the drug had been an inappropriate response to his condition. Put into the Supreme Court's framework, this knowledge is knowledge of legal rights and standards. In the instant case, the knowledge plaintiff lacked was unrelated to the appropriate medical and legal standards for prescribing or performing spinal taps, but related to the permanence of the injury, a factual matter.

Until the plaintiff has reason to believe that the effects of a surgical procedure are different from those anticipated, it cannot be said that the plaintiff is aware of the injury which is the basis of his action. In *Cox, supra*, the plaintiff was a woman who had undergone sterilization. She believed the sterilization could be reversed by another surgical procedure, but later discovered that she would be permanently unable to bear children. When she filed suit, her claim would have been time-barred if her cause of action accrued at the time of the operation, but within the limitations period if measured from the time she discovered the permanence of the operation. The court held that the cause of action accrued only when she discovered that her sterilization was permanent.

8. It is undisputed that this cause of action accrued at the time of the alleged assault, and plaintiff's counsel has conceded that this claim has prescribed.